UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
AJMEL A. QUERESHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0393

August 29, 2023

LETTER TO COUNSEL

RE: *Jerome S. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. AAQ-22-02963

Dear Counsel:

On November 15, 2022, Plaintiff petitioned this Court to review the Social Security Administration ("SSA")'s final decision to deny his claim for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. ECF No. 1. I have considered the parties' briefs, ECF Nos. 11, 13, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, for the reasons discussed below, I will remand this case for further consideration in accordance with my analysis and conclusions.

I.      **The History of this Case**

   a. **Procedural History**

Plaintiff filed his claim for Title II disability insurance benefits and Title XVI supplemental security income on September 12, 2019, alleging a disability onset date of July 19, 2019. ECF No. 8, at 15. The SSA denied Plaintiff's claim initially and upon reconsideration. *Id.* Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically on December 23, 2021. *Id.* On March 7, 2022, the ALJ issued his decision, finding that Plaintiff did not have a disability as defined by the Social Security Act during the relevant time period. *Id.* at 12, 16. On September 23, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Thus, the ALJ's decision reflects the final, reviewable decision of the SSA. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

   b. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the severe impairments of "[d]egenerative joint disease of the bilateral shoulder region, bilateral knee osteoarthritis, and obesity." ECF No. 8, at 18. Because the ALJ found that none of Plaintiff's impairments, alone or in combination, met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, he assessed Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the ability

*Jerome S. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. AAQ-22-02963
August 29, 2023
Page 2

"to perform less than a full range of medium work." *Id.* at 19. Specifically, the ALJ found that Plaintiff was capable of:

> Lifting 50 pounds occasionally and 25 pounds frequently[;] [c]arrying 50 pounds occasionally and 25 pounds frequently[;] [s]itting for 6 hours, but he must have the ability to alternate to standing for 5 minutes after every 25 minutes of sitting[;] [s]tanding for 6 hours and walking for 6 hours[;] [p]ushing/pulling as much as [he] can lift/carry[;] [o]ccasionally reaching overhead. For all other reaching he can reach frequently[;] [c]limbing ramps and stairs occasionally; never climbing ladders, ropes, or scaffolds; maintaining balance over narrow, slippery, or erratically moving surfaces frequently; stooping frequently; kneeling frequently; crouching frequently; and crawling frequently[;] [and] . . . remain[ing] on task during the periods of alteration of position.

*Id.* at 20.

In making this determination, the ALJ followed the two-step process set forth in 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). ECF No. 8, at 20. The ALJ first found that Plaintiff had shown evidence of "medically determinable impairments [that] could reasonably be expected to cause [his] alleged symptoms." *Id.* at 21. At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* In his analysis, the ALJ cited medical records submitted by Plaintiff, including an orthopedic consultative examination conducted on March 16, 2020,[1] *see id.* at 21–24; an opinion rendered by a Disability Determination Services ("DDS") medical consultant initially on April 23, 2020, and an opinion rendered by a second DDS medical consultant upon reconsideration on November 2, 2020, *see id.* at 24, 85, 112; Plaintiff's hearing testimony regarding his impairments and their impact on his ability to work and, more specifically, lift, stand, and sit, *see id.* at 20–21; and Plaintiff's "report of daily life activities," *id.* at 25, as reported during his orthopedic consultative examination in March 2020, *see id.* at 23. Although Plaintiff reported a worsening of his condition and a change in his daily activities as of June 2020, *see id.* at 399–400, 402, the ALJ did not cite this evidence in his opinion.

Based on his RFC assessment, the ALJ concluded that Plaintiff was not able to perform past relevant work as a construction laborer, grasscutter, or landscape laborer. *Id.* at 25. However, based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform other jobs, such as childcare attendant, laundry worker, and warehouse worker, that exist in significant

---

[1] The ALJ's opinion indicates that Plaintiff underwent the orthopedic consultative examination on March 17, 2020. ECF No. 8, at 23. The medical consultant's report of this examination is dated March 17, 2020, but the examination itself was conducted on March 16, 2020. *See id.* at 488.

*Jerome S. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. AAQ-22-02963
August 29, 2023
Page 3

numbers in the national economy. *Id.* at 26. Therefore, the ALJ concluded that Plaintiff did not have a disability and denied his claim for disability benefits. *See id.* at 26–27.

## II. Plaintiff's Arguments on Appeal

On appeal, Plaintiff raises two arguments: 1) the ALJ erroneously assessed Plaintiff's RFC because he failed to properly perform a function-by-function assessment and failed to provide a narrative discussion describing how the evidence supported each of his conclusions, ECF No. 11, at 3, 5, 8; and 2) the ALJ erroneously evaluated Plaintiff's subjective complaints, *id.* at 11. This opinion will focus on Plaintiff's second argument, which the Court finds persuasive.

In assessing a claimant's subjective complaints of pain or other symptoms, an ALJ must follow the two-step process prescribed by 20 C.F.R. §§ 404.1529 and 416.929 and described in SSR 16-3p, 2016 WL 1119029. *See, e.g.*, *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020); *Craig*, 76 F.3d at 594–95. Under this process, the ALJ must first determine whether there is objective medical evidence of a "'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas*, 983 F.3d at 95 (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). If there is evidence of such a medically determinable impairment, the ALJ must then "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4). Objective evidence of the claimant's alleged symptoms or their intensity is not required at the second step; instead, the claimant may rely entirely on subjective evidence. *See id.*; *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) ("The Fourth Circuit has long held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989))). While the ALJ is not required to accept the claimant's subjective evidence to the extent it is inconsistent with other evidence in the record, the ALJ must consider all of the available evidence and cannot discredit the plaintiff's subjective evidence simply because it is not confirmed by objective medical evidence. *See Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3)).

The ALJ followed this two-step process and found that Plaintiff had provided objective evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms, *see* ECF No. 8, at 20–21; however, the ALJ erred in his assessment at the second step. Specifically, in concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," *id.* at 21, the ALJ erred by failing to "build an accurate and logical bridge" between the evidence and his conclusion, *Stoker v. Saul*, 833 F. App'x 383, 386 (4th Cir. 2020) (per curiam) (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)); ignoring and misstating evidence, particularly with respect to Plaintiff's daily activities and pain management; and emphasizing Plaintiff's failure to seek a recommended treatment without inquiring as to Plaintiff's reasons for failing to do so.

*Jerome S. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. AAQ-22-02963
August 29, 2023
Page 4

    First, the ALJ erred by failing to "build an accurate and logical bridge from the evidence to [his] conclusion" that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain were inconsistent with other evidence in the record. *See, e.g.*, *Martina F. v. Saul*, No. GLS 20-01724, 2021 WL 2877425, at *3 (D. Md. July 8, 2021) (citing *Stoker*, 833 F. App'x at 386, "for the proposition that when objective evidence fails to support a claimant's statements, an ALJ must base his or her finding on the credibility of a claimant's statements on the entire case record and build an accurate logical bridge between the evidence and the ALJ's conclusion"). While the ALJ did list much of the available evidence — including an April 2021 MRI showing grade IV chondromalacia in Plaintiff's knee,[2] ECF No. 8, at 21, and Plaintiff's statements during an August 2021 medical examination that his "average pain was a 7/10 and worst pain was a 10/10," *id.* at 23 — the ALJ repeatedly emphasized the normal findings from Plaintiff's physical examinations, *see id.* at 21–24, without explaining how he weighed the various evidence or how the lack of particular objective indicators undermined other objective and subjective evidence of Plaintiff's pain. *See, e.g.*, *Towanna G. v. Kijakazi*, No. 21-1711-BAH, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022) (finding that the ALJ erred by "fail[ing] to adequately explain how or why other evidence in the record [was] more credible" than the plaintiff's testimony); *Coreen T. v. Kijakazi*, No. CBD-19-3372, 2022 WL 252961, at *4 (D. Md. Jan. 26, 2022); *Janice B. v. Comm'r, Soc. Sec. Admin.*, No. BPG-17-2456, 2018 WL 5620567, at *3 (D. Md. Oct. 30, 2018); *Laroche v. Berryhill*, No. TMD 16-3214, 2018 WL 1243545, at *6 (D. Md. Mar. 9, 2018). "[M]eaningful review is frustrated" where, as here, the ALJ "goes straight from listing evidence to stating a conclusion," *Michelle P. v. Saul*, No. TMD-19-3499, 2021 WL 119076, at *5 (D. Md. Jan. 12, 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)), and the ALJ's failure to connect the evidence to his conclusion "constitutes reversible error," *id.* (citing *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017)).

    Relatedly, and significantly, the ALJ failed to build an accurate bridge between the evidence and his conclusion regarding Plaintiff's pain management. Specifically, the ALJ ultimately concluded that Plaintiff's "positive symptoms are adequately managed with conservative modalities through orthopedics and pain management," ECF No. 8, at 21, despite numerous and consistent statements from Plaintiff and his healthcare providers indicating the contrary, *see id.* at 633 (noting that Plaintiff had "failed all other [attempted] forms of conservative management"); *see also id.* at 523, 525, 527, 612, 631, and the ALJ's own acknowledgment that Plaintiff had tried various treatments that yielded no relief of his pain, *see id.* at 22–24. The ALJ should provide an explanation for this discrepancy on remand. *See Arakas*, 983 F.3d at 99, 112 (remanding where, among other errors, the ALJ "misstated or mischaracterized . . . material facts," *id.* at 99); *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016) (noting potential inconsistency between the ALJ's statement that the claimant's "conditions were controlled with conservative treatment" and the claimant's "consistent[] report[s]" that the treatment did not improve his symptoms, and stating that it would be "incumbent" on the ALJ "to provide a clearer explanation" if he chose to "discredit [the claimant]'s testimony" on remand).

---

[2] As explained in Plaintiff's brief, a finding of grade IV chondromalacia "indicates that there is complete loss of cartilage" such that Plaintiff's knee is "bone on bone." ECF No. 11, at 6.

Additionally, the ALJ focused on particular evidence, while ignoring other contrary evidence in conducting his assessment of Plaintiff's subjective complaints of pain. *See, e.g.*, *Stoker*, 833 F. App'x at 386 ("[A]n ALJ may not 'cherrypick' facts to support a finding that a claimant is not disabled while ignoring evidence that points to a claimant's disability." (quoting *Lewis*, 858 F.3d at 869)). To start, in discussing Plaintiff's daily activities, the ALJ, citing Plaintiff's consultative examination from March 2020, noted that Plaintiff "could do daily chores as well as do standing, walking, lifting, carrying, handling, hearing, speaking, and traveling." ECF No. 8, at 23 (citing *id.* at 489). The ALJ subsequently concluded that Plaintiff's "report of daily life activities," along with other evidence, "do not support a more restrictive residual functional capacity than set forth above." *Id.* at 25. However, the ALJ did not address Plaintiff's statements that he has trouble dressing himself, maintaining his personal hygiene, and using the toilet, *see id.* at 60, 408, experiences difficulties completing chores such as cooking, grocery shopping, and cleaning, *see id.* at 60–61, 409–10, cannot go out alone due to his inability to drive for long periods of time, *id.* at 410, and "just sit[s] at home listening to music" most days, *id.* at 59, because "it's kind of hard" to do anything else, *id.* at 60. The ALJ's selective citation of the evidence constitutes error. *See, e.g.*, *Shelley C.*, 61 F.4th at 362 (finding that the ALJ erred by "cherry-pick[ing] from the record, highlighting [the plaintiff]'s good moments and bypassing the bad"); *Hines v. Barnhart*, 453 F.3d 559, 565–66 (4th Cir. 2006) (finding that the ALJ erred by "selectively cit[ing]" evidence regarding the plaintiff's daily activities); *Debra Ellen L. v. Saul*, No. TMD-18-3708, 2020 WL 1529004, at *4–5 (D. Md. Mar. 31, 2020); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." (citing *Brown*, 873 F.3d at 263)).

The ALJ also ignored evidence regarding the severity of Plaintiff's pain. Plaintiff alleged that his condition worsened in June 2020. *See* ECF No. 8, at 399–400, 402 (alleging "worsen[ing]" of his knees, *id.* at 400, and "extreme pain," *id.* at 402). However, the ALJ did not address this allegation or consider how it might contribute to inconsistencies in the evidence regarding the intensity, persistence, and limiting effects of Plaintiff's pain before and after June 2020. *See* SSR 16-3p, 2016 WL 1119029, at *8 ("[I]nconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time."); *Langston v. Comm'r of Soc. Sec. Admin.*, No. 22-1257, 2023 WL 1519521, at *4 (4th Cir. Feb. 3, 2023) (per curiam) (finding that the ALJ "improperly relied upon [the plaintiff]'s daily activities without also considering her qualifying statements that her ability to participate in these activities had lessened over time"); *Arakas*, 983 F.3d at 99 (indicating that the ALJ erred in concluding that the plaintiff's symptoms were moderate "while omitting any mention of . . . various treatment notes from the relevant period indicating [the plaintiff]'s severe or worsening pain and fatigue").

Finally, the ALJ erred by emphasizing Plaintiff's failure, despite referrals from his healthcare providers, to obtain physical therapy, without inquiring as to his reasons for not seeking this treatment. Per SSR 16-3p, an ALJ cannot use a claimant's "fail[ure] to follow prescribed treatment that might improve symptoms" as a basis for finding that the claimant's symptoms are inconsistent with the record evidence "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." 2016

WL 1119029, at *8; *see Lepus-McCardell v. Comm'r, Soc. Sec. Admin.*, No. MJG-17-1894, 2018 WL 1811515, at *2 (D. Md. Apr. 17, 2018) ("[P]ost SSR 16-3p, the SSA 'may not use the failure to pursue treatment as a reason for discounting an individual's claims regarding symptom intensity, persistence, and limiting effects "*without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints.*"'" (omission in original) (quoting *Jones v. Colvin*, No. 15 C 11310, 2016 WL 4798956, at *5 (N.D. Ill. Sept. 14, 2016) (emphasis added))). The ALJ noted Plaintiff's failure to seek physical therapy in four separate paragraphs of his decision, *see* ECF No. 8, at 21, 23–24; however, he did not ask any questions about Plaintiff's failure to seek physical therapy during the hearing or otherwise consider Plaintiff's reasons for not following through with his physical therapy referrals.[3] In similar cases, this Court has remanded for the ALJ's failure to follow the protocol set forth in SSR 16-3p. *See Megan M. v. Kijakazi*, No. CBD-19-3395, 2022 WL 19774, at *8 (D. Md. Jan. 3, 2022); *Flowers v. Comm'r, Soc. Sec.*, No. CCB-17-3043, 2018 WL 3068682, at *2 (D. Md. June 21, 2018); *Lepus-McCardell*, 2018 WL 1811515, at *2.

Because the Court remands this case on other grounds, the Court need not address Plaintiff's arguments regarding the ALJ's RFC assessment. Regardless, the ALJ should address these issues on remand. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues.").

### III.   Conclusion

For the reasons set forth herein, and pursuant to sentence four of 42 U.S.C. § 405(g), this case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it is an Order of the Court and should be treated accordingly. So ordered.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge

---

[3] Plaintiff's attorney stated at the hearing that Plaintiff had completed some physical therapy and that there were records of this therapy, *see* ECF No. 8, at 47, but the record does not contain documentation of any physical therapy Plaintiff received.